UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KENNETH RAY WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:17-cv-465-DCP |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Kenneth Ray Williams ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I.    PROCEDURAL HISTORY**

On May 4, 2015, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that began on November 7, 2014. [Tr. 14, 136–38]. After his application was denied initially and upon

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 86]. A hearing was held on August 24, 2016. [Tr. 32–53]. On September 29, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 14–23]. The Appeals Council denied Plaintiff's request for review on September 29, 2017 [Tr. 2–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on October 25, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

**II.     ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since November 7, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: osteoarthrosis and allied disorders (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry (including upward pulling) fifty pounds occasionally and twenty-five pounds frequently. He can stand, walk, and sit (with normal breaks) about six hours each in an eight hour day. He can perform unlimited pushing/pulling (including hand/foot controls) within his exertional limitations. He can perform frequent postural activities. He has no manipulative, visual, communicative or environmental limitations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 19, 1955 and was 59 years old, which is defined as an individual of "advanced age" on the alleged disability onset date. The claimant subsequently changed age category to "closely approaching retirement age" (20 CFR 404.1563).

8. The claimant has a "limited" education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 7, 2014, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 16–23].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V.     ANALYSIS

Plaintiff presents several challenges to the ALJ's finding that he was not disabled. First, Plaintiff maintains that the ALJ improperly found that the opinion of his treating nurse practitioner, Joshua Cooper, N.P., was overly restrictive and inconsistent with the medical evidence, as the ALJ failed to reference specific inconsistencies with the medical record. [Doc. 14 at 12–13]. Additionally, Plaintiff claims that the ALJ improperly afforded great weight to the opinions of the nonexamining state agency consultants, Thomas Thrush, M.D. and George Walker, M.D. [*Id.* at 13–14]. Lastly, Plaintiff maintains that the ALJ erroneously found that consultative examiner, Jeffrey Uzzle, M.D., opined that Plaintiff could perform a range of medium exertion, as well as failed to address what weight he afforded to Dr. Uzzle's opined lifting assessment. [*Id.* at 14–15]. The Court will address Plaintiff's specific allegations of error in turn.

A.     **Opinion of Jonathan Cooper, N.P.**

Plaintiff challenges the assignment of no weight to the opinion of his treating nurse practitioner, Jonathan Cooper, asserting that the ALJ discredited his opinion "simply because he was not an 'acceptable medical source.'" [Doc. 14 at 13].

Plaintiff began treatment with Mr. Cooper on March 3, 2010 for treatment of his hypertension, aching joints, and hyperlipidemia. [Tr. 476]. He continued to see Mr. Cooper on June 11, 2010 [Tr. 469], November 16, 2010 [Tr. 463], August 2, 2011 [Tr. 453], and September 14, 2011 [Tr. 446] for treatment of arthritic pain in his hands, feet, neck, shoulders, and knees. Mr. Cooper referred Plaintiff to a rheumatology specialist for an evaluation of his arthritis on February 5, 2013. [Tr. 329]. Plaintiff returned to Mr. Cooper on August 6, 2013 [Tr. 336], December 10, 2013 [Tr. 356], December 22, 2014 [Tr. 376], April 20, 2015 [Tr. 383], October 21, 2015 [Tr. 436], December 23, 2015 [Tr. 431], March 2, 2016 [Tr. 425], and July 5, 2016 [Tr. 503].

On July 7, 2016, Mr. Cooper completed a Medical Assessment of Ability to Do Work-Related Activities [Tr. 506–12]. In this opinion, Mr. Cooper notes that he had been treating Plaintiff for six years, and diagnosed Plaintiff with severe osteoarthritis, degenerative disc disease, and possible non-seropositive rheumatoid arthritis, based upon performed x-rays, laboratory studies, and physical examinations. [Tr. 506]. Additionally, Mr. Cooper opined that Plaintiff could lift five pounds on a frequent basis, and ten pounds on an occasional basis. [Tr. 507]. Mr. Cooper found that Plaintiff could sit, stand, or walk at one time for thirty minutes, and that in an eight-hour work day, Plaintiff is able to stand or walk for less than two hours. [*Id.*]. Next, Mr. Cooper opined that Plaintiff could occasionally climb, bend, or stoop; and never balance, crouch, kneel, crawl, or squat. [Tr. 508]. Further, Mr. Cooper stated that Plaintiff would require more than three breaks in an eight-hour day, including one to two breaks of ten to fifteen minutes or longer, per hour. [Tr. 509]. Lastly, Mr. Cooper opined that Plaintiff would likely be absent more than four days a month from work as a result of his impairments. [Tr. 510].

The ALJ did not accord any weight to Mr. Coper's assessment in formulating Plaintiff's RFC. [Tr. 19]. First, the ALJ noted that as a nurse practitioner, Mr. Cooper is not an acceptable medical source under 20 C.F.R. 404.1513(c), and thus his opinion is evaluated under Social Security Ruling 06-03p—rather than the treating physician rule. [*Id.*]. The ALJ then noted Mr. Cooper's treating relationship with Plaintiff, but found that the opinion was overly restrictive and inconsistent with the medical record. [*Id.*]. Additionally, the ALJ stated that Mr. Cooper "provided little indication of any objective evidence he relied upon in forming his opinions." [*Id.*].

7

Social Security Ruling 06-03p governs the opinions of "not acceptable medical sources." Soc. Sec. Rul. 06–03, 2006 WL 2329939, at *2 (Aug. 9, 2006).[2] Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902. Evidence from those who are "not acceptable medical sources" or "other sources," including nurse practitioners, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." Soc. Sec. Rul. 06–03, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of "other sources.") (citing 20 C.F.R. § 416.913(d)(1)).

Therefore, as an "other source," Mr. Cooper's opinion was not subject to any special degree of deference. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (stating that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medical source'"). Interpreting Social Security Ruling 06-03p, the Sixth Circuit found that "[o]pinions from non–medical sources who have seen the [Plaintiff] in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

---

[2] "SSR 06-03p was rescinded effective March 27, 2017, *see* Notice of Rescission of Social Security Rulings, 82 Fed. Reg. 15263-01 (March 27, 2017), but was in effect at the time of the ALJ's decision, and as such, applies here." *Davis v. Comm'r of Soc. Sec.*, No. 1:16-CV-2446, 2018 WL 1377790, at *7 n.6 (N.D. Ohio Mar. 19, 2018).

Here, the ALJ considered Mr. Cooper's opinion under Social Security Ruling 06-03p and stated several reasons for discounting the opinion. First, the ALJ acknowledged Mr. Cooper's treating relationship but found that the assessment was overly restrictive and inconsistent with the medical record. [Tr. 19]; *see* SSR 06-03p, 2006 WL 2329939, at *4–5 (noting that whether an other source's opinion is consistent with other evidence is relevant to evaluation of source's opinion). While Plaintiff challenges the ALJ's failure to identify specific inconsistencies when discussing Mr. Cooper's opinion, the ALJ discussed the medical record throughout the opinion. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

For example, the ALJ noted that although Keith Thorton, D.C. suggested an orthopedic consultation for his spondylosis and injuries after a motor vehicle accident, Plaintiff stated that he did not feel comfortable with the idea of injections or the possibility of surgery. [Tr. 19]. Additionally, the ALJ discussed negative laboratory findings for rheumatoid arthritis. [*Id.*]. The ALJ also cited to Plaintiff's normal tone, muscle bulk, and range of motion in his upper extremities, as well as normal strength in his lower extremities with no abnormal movement noted on Plaintiff's last visit with Mr. Cooper on July 5, 2016. [*Id.*]; *see* [Tr. 499–505]. Lastly, the ALJ referenced that Plaintiff's shoulder, elbow, and wrist joint stability were normal, and that his gait was within normal limits. [*Id.*].

As Mr. Cooper was not a treating physician, the ALJ had "broad discretion" when evaluating his opinion as an "other source" opinion. *Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015). Although Mr. Cooper stated in the opinion that he had used x-rays,

laboratory studies, and physical examinations in his evaluation and treatment of Plaintiff, the ALJ noted that Mr. Cooper did not indicate what specific objective evidence he relied upon in forming his opinion. [Tr. 19].

Ultimately, contrary to Plaintiff's argument, the ALJ did not summarily dismiss the opinion because it was given by a nurse practitioner. *See, e.g.*, *Antonaros-Ewing v. Comm'r of Soc. Sec.*, No. 3:14-CV-13, 2015 WL 5047968, at *5 (S.D. Ohio Feb. 17, 2015) ("Such detailed and reasoned explanation shows that, contrary to Plaintiff's contention, the ALJ did not discount [the nurse practitioner's opinions] solely because she is not an 'acceptable medical source.' Instead, the ALJ appropriately recognized that—as an 'other source'—[the nurse practitioner's] opinions are not entitled to 'special deference' under the regulations (in comparison to, for example, a treating physician)."); *cf. Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007) (finding the ALJ failed to properly assess the nurse practitioner's opinion, as the "ALJ's *only* explanation for discounting [the nurse practitioner's] opinion was that '[the nurse practitioner] is neither a medical doctor nor a vocational expert, and thus lacks the credentials for making such a determination'"). Therefore, the ALJ's assignment of no weight to Mr. Cooper's opinion is supported by substantial evidence.

### B. Opinions of Thomas Thrush, M.D. and George Walker, M.D.

Plaintiff alleges that the ALJ improperly afforded great weight to the opinions of the nonexamining state agency consultants, claiming that the ALJ's explanation for the weight assigned to these opinions was boilerplate language, the ALJ did not recite to any medical records to support his assignment of great weight, and the nonexamining consultants did not review any objective diagnostic testing. [Doc. 14 at 13–14]. However, the Commissioner maintains that the ALJ appropriately considered the expertise of Dr. Thrush and Dr. Walker, as well as discussed the

evidence not available to the nonexamining state agency consultants throughout his opinion. [Doc. 16 at 12–14].

Dr. Thrush examined the medical evidence of record at the initial level of the agency's review, and opined that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. [Tr. 59]. Additionally, Dr. Thrush found that Plaintiff could stand and/or walk, as well as sit, for a total of six hours in an eight-hour workday. [*Id.*]. Lastly, Dr. Thrush opined that Plaintiff could frequently climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, or crawl. [Tr. 59–60]. Accordingly, Dr. Thrush found that Plaintiff demonstrated the maximum sustained work capability for a medium range of work. [Tr. 61]. Dr. Walker assessed the medical evidence of record at the reconsideration level of the agency's review, and assessed identical limitations. [Tr. 64–73].

In the disability decision, the ALJ assigned great weight to Dr. Thrush and Dr. Walker's opinions, noting that the medical consultants are experts in the field of disability, as well as familiar with the regulations and uniform definitions utilized by the Commissioner. [Tr. 20]. The ALJ stated that the opinions found that Plaintiff could perform a range of medium exertion, and that the opinions were "most consistent with the medical evidence and longitudinal treatment record as a whole." [*Id.*].

First, the Court notes that "good reasons" need only be given in explaining weight assigned to an opinion from a treating source. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397 (6th Cir. 2014) ("However, the 'good reasons' requirement 'only applies to treating sources.'") (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). Further, even when

discussing treating source's opinions, "the ALJ may give her reasons in an 'indirect but clear' or 'implicit[ ]' manner." *DePottey v. Comm'r of Soc. Sec.*, No. 13–CV–13305, 2014 WL 4197362, at *12 (E.D. Mich. Aug. 22, 2014) (citing *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010)) (other citations and internal quotation marks omitted). Here, the ALJ appropriately considered the nonexamining consultants' status as specialists in the field of disability, as well as the consistency of their opinions with the medical record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c) to note that opinions from nonexamining sources are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability").

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3). However, when the non-examining source's opinion is based on review of an incomplete record, there must be an indication that the ALJ considered that fact before giving greater weight to the non-examining source's opinion. *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)).

Plaintiff claims that Dr. Thrush and Dr. Walker "did not consider any objective diagnostic

testing; [as] all x-ray radiology reports, including reports detailing the severity of Plaintiff's spine condition, were submitted at the hearing level." [Doc. 14 at 14]. Plaintiff cites to June 16, 2014 x-rays performed at Fort Sanders Regional Medical Center [Tr. 412–15], as well as a radiology report from September 14, 2011 [Tr. 447].

"[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (citing *Blakley*, 581 F.3d at 409). In *Spicer*, the Sixth Circuit found that the ALJ had satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.* Similarly, in order for an ALJ to provide "'some indication' that he 'at least considered' that the source did not review the entire record . . . the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409).

In the disability decision, the ALJ appropriately reviewed the relevant diagnostic imaging. The ALJ noted that Plaintiff was involved in a motor vehicle accident in June 2014 and reported to Fort Sanders Regional Medical Center. [Tr. 19]. Accordingly, the ALJ detailed that "[a] lumbar spine x-ray showed L5 spondylolysis and grade 1 spondylolisthesis," that "[a] cervical spine x-ray[ ] revealed degenerative disc disease," and "[r]ight knee ex-rays found no acute abnormality and chest x-rays cited no acute chest findings." [*Id.*]; *see* [Tr. 403–15]. Further, the September 14, 2011 radiology report, which Plaintiff cited to in his brief, found that Plaintiff has no significant degenerative changes or arthritis in either hand. [Tr. 447].

13

Although Dr. Thrush and Dr. Walker did not review pertinent diagnostic imaging prior to assessing their opinions, the record reflects that the ALJ made an independent determination based on all the medical evidence and that the ALJ's analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017). Therefore, the ALJ "subjected [Dr. Thrush and Dr. Walker's] opinion[s] to scrutiny" sufficient to find that he considered that these nonexamining state agency consultants did not review the entire record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016).

**C.     Opinion of Jeffrey Uzzle, M.D.**

Plaintiff contends that the ALJ mischaracterized Dr. Uzzle's opinion and "applied an incorrect legal standard when finding Dr. Uzzle's lifting limitation of Plaintiff resulted in a medium physical demand level of work, when, in fact, his lift limitation would result in a light physical demand level of work." [Doc. 14 at 15]. Additionally, Plaintiff claims that the ALJ failed to state what weight was assigned to the opined lifting assessment. [*Id.*]. However, the Commissioner asserts that the ALJ instead found that Dr. Uzzle opined that Plaintiff could perform "a range" of medium work. [Doc. 16 at 12].

Dr. Uzzle consultatively examined Plaintiff on June 10, 2015. [Tr. 386–398]. First, Dr. Uzzle commented that Plaintiff was a "poor historian for many specific details." [Tr. 387]. Dr. Uzzle noted that Plaintiff does not use assistive devices, and has normal station, gait, toe walking,

14

heel walking, deep knee bend, and tandem walking without the use of these assistive devices. [*Id.*]. Additionally, Dr. Uzzle found that Plaintiff has arthritic pain and stiffness in the right knee limiting right knee flexion at 135 degrees, limited right third finger PIP joint flexion at 90 degrees, and limited dorsolumbar flexion at 80 degrees. [*Id.*]. Lastly, Dr. Uzzle stated that Plaintiff's sensation is intact in the four extremities, and strength testing is 5/5 in the four extremities. [Tr. 388]. Dr. Uzzle further noted that Plaintiff's "subjective complaints are out of proportion to objective findings," while assessing chronic pain and generalized osteoarthritis. [Tr. 388].

Dr. Uzzle also completed a Medical Source Statement of Plaintiff's Ability to Do Work-Related Activities. [Tr. 389]. Dr. Uzzle opined that Plaintiff could continuously lift or carry up to ten pounds; frequently lift or carry from eleven to twenty pounds; and that Plaintiff could occasionally lift or carry from twenty-one to fifty pounds. [*Id.*]. Next, Dr. Uzzle found that Plaintiff could sit for two hours at one time without interruption, and for six hours total in an eight-hour work day; as well as that Plaintiff could stand or walk for one hour at a time and four hours total in an eight-hour work day. [Tr. 390]. Dr. Uzzle also opined that Plaintiff could frequently reach, handle, finger, feel, and push/pull with both hands [Tr. 391], and that Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, or crawl [Tr. 392].

In the disability decision, the ALJ noted that Dr. Uzzle stated that Plaintiff was a poor historian, and that Plaintiff had seen a primary care physician, but not a rheumatologist. [Tr. 20]. Similarly, the ALJ reviewed Dr. Uzzle's findings that Plaintiff had normal station, gait, toe walking, heel walking, deep knee bend, and tandem walking without the use of assistive devices. [*Id.*]. The ALJ also discussed Dr. Uzzle's assessment that Plaintiff's strength testing was 5/5 in his four extremities and muscle tone was normal during the examination. [*Id.*]. Therefore, the

15

ALJ found that "Dr. Uzzle averred [that Plaintiff] could perform a range of medium exertion." [*Id.*]. Ultimately, the ALJ found that "[s]aid assessment is somewhat consistent with the objective and clinical evidence of record," but that Dr. Uzzle's opined limitations on the total amount of time Plaintiff could stand, or no more than frequent use of his hands, were "unsupported by the overall evidence of record and his examination and have been afforded no weight." [*Id.*].

Plaintiff claims that the ALJ mischaracterized Dr. Uzzle's opinion by stating that Plaintiff could perform a range of medium work, and failed to state what weight was given to the opined lifting assessment. "Medium work" involves the occasional lifting of 50 pounds at a time, and frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567. However, Magistrate Judge Guyton recently addressed a seemingly identical argument and found that the claim "that the ALJ made a harmful misstatement of the evidence when he characterized Dr. Uzzle's lifting and carrying restriction [of twenty pounds] as an ability to lift and carry at the medium level" was harmless error. *Oliveira v. Berryhill*, No. 3:17-CV-204-HBG, 2018 WL 1976451, at *5 (E.D. Tenn. Apr. 26, 2018) (internal quotation marks omitted); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (finding an error is harmless and will not result in remand "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses").

Similar to *Oliveira*, the ALJ in the present case did not defer to Dr. Uzzle's lifting limitation, but instead assigned great weight to the opinions of Dr. Thrush and Dr. Walker, who opined that Plaintiff could frequently lift or carry twenty-five pounds. "Therefore, the ALJ's misstatement regarding the lifting and carrying requirement of medium work in summarizing Dr. Uzzle's opinion is inconsequential to the Court's substantial evidence analysis." *Oliveira*, 2018 WL 197641, at *5; *see, e.g.*, *Simonetta v. Comm'r of Soc. Sec.*, No. 13-10607, 2014 WL 806416,

at *4 (E.D. Mich. Feb. 28, 2014) ("Just as no trial is perfect, no administrative hearing or opinion is either; thus, in analyzing an ALJ's decision, a reviewing court is to look for fatal gaps or contradictions and not nitpick in search of essentially meaningless missteps.") (cleaned up).[3]

The Court also notes that the ALJ did not assign controlling weight to Dr. Uzzle's opinion. Rather, the ALJ found that Dr. Uzzle's opined limitations on the total amount of time standing or walking, as well as Plaintiff's use of his hands, were not supported by the evidence or Dr. Uzzle's examination. Therefore, the ALJ assigned no weight to these assessed limitations, while finding the overall opinion was "somewhat consistent with the objective and clinical evidence of record." *Cf. Reed v. Comm'r of Soc. Sec.*, No. 1:16-CV-572, 2017 WL 1531872, at *6 (W.D. Mich. Apr. 28, 2017) (remanding case where, inter alia, "[t]he ALJ did not explain why he did not adopt this portion of the opinion [doctor's opinion as to the plaintiff's limitations] despite giving it great weight"). The ALJ did not ignore Dr. Uzzle's opinion, but stated that the opinion found that Plaintiff could perform a modified range of medium work. Ultimately, "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Here, the Court finds that the ALJ appropriately considered Dr. Uzzle's opinion in the RFC determination, and any error with respect to his characterization of the assessed limitations in the opinion is harmless. Therefore, Plaintiff's arguments to the contrary are not well taken.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be

---

[3] *See United States v. Joiner*, 727 F. App'x 821, 827 (6th Cir. 2018) (using "cleaned up" parenthetical to remove internal quotations and alterations to the language of the cited opinion).

**GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge